IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENEE M. JEFFRIES, | ) | CASE NO. 1:12-cv-01718 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION,[1] | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Renee M. Jeffries ("Plaintiff" or "Jeffries") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits. Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 13.

The Administrative Law Judge ("ALJ") determined that Jeffries was not disabled because she had the residual functional capacity ("RFC") to perform two sedentary jobs she had previously performed. Before issuing his decision, the ALJ had referred Jeffries for a post-hearing examination by a consultative examining physician ("CE"), an examination that the ALJ said would be "critical." As discussed below, the ALJ erred because, while he stated that he gave great weight to the CE's report, he failed to explain why he did not adopt the CE's opinion that Jeffries was limited to one hour of uninterrupted sitting, a limitation that may have precluded

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

1

her past work,[2] nor did he explain how he accounted for inconsistencies in the CE's opinions. Accordingly, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

## I. Procedural History

Jeffries filed an application for Disability Insurance Benefits on or about June 10, 2008. Tr. 89-90, 144-150. She alleged a disability onset date of August 2, 2003 (Tr. 144), which was later amended to June 15, 2008 (Tr. 17, 39-41). Jeffries claimed disability based on cervical spine damage, equilibrium problems, difficulty walking, standing and stair climbing, joint numbness, carpal tunnel, lumbar spine back pain, joint pain and stiffness, and affective disorders. (Tr. 91, 98, 175). After initial denial by the state agency (Tr. 89, 91-94), and denial upon reconsideration (Tr. 90, 98-104), Jeffries requested a hearing (Tr. 105). On, September 9, 2010, Administrative Law Judge Allen G. Erickson ("ALJ") conducted an administrative hearing. Tr. 32-88.

In his July 11, 2011, decision (Tr. 14-31), the ALJ determined that Jeffries had not been under a disability from June 15, 2008, the amended onset date, through the date of the decision. Tr. 26. Jeffries requested review of the ALJ's decision by the Appeals Council. Tr. 12-13. On May 8, 2012, the Appeals Council denied Jeffries' request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Factual Background

**A.     Personal and Vocational Evidence**

---

[2] Since the consultative examination occurred post-hearing, there is no vocational expert ("VE") testimony relative to the opinions offered by the CE. However, the VE's testimony in response to the ALJ's question regarding the viability of a sit/stand option for a computer programmer position (Tr. 64-65) may suggest that, if the CE's one hour uninterrupted sitting limitation was adopted, Jeffries would be precluded from performing her past work as a computer programmer.

Jeffries was born on March 5, 1959.  Tr. 144, 170.  She was 51 years of age at the time of the hearing.  Tr. 44.  She is married and has a teenage son.  Tr. 63, 66, 174.  Jeffries completed three years of college courses and has computer programming job training.  Tr. 182-83.  She last worked in June of 2008.  Tr. 176.  Her past employment includes work as an applications programmer, MIS technician, programmer/support specialist, programmer analyst, and IT instructor.  Tr. 176.

**B.    Administrative Hearing**

   **1.    Jeffries' testimony**

At the administrative hearing, Jeffries was represented by counsel and testified.  Tr. 40-41, 44-46, 47-50, 51-73, 85-87.  She testified that in 2003 her condition was deteriorating and her doctors could not figure out what was wrong.  Tr. 58-59.  They thought that Jeffries may have had MS.  Tr. 59.  In mid-2003, following a series of tests, an MRI was performed which showed that Jeffries had two cervical discs sticking into her spine.[3]  Tr. 59.  She underwent cervical spine surgery.  Tr. 59-60.  Following her surgery, Jeffries returned to work and continued to work until 2008, with the assistance of others who drove her to work.  Tr. 60.  Jeffries stopped working in 2008 because her physical impairments caused her so much pain that she could barely walk.  Tr. 54-55.  She was unable to get out of bed and was always calling off work.  Tr. 55.  She indicated that just walking down the hallways to get to her classes at work was difficult for her.  Tr. 55.  She was taking many medications and they were wearing her out.  Tr. 55.

Jeffries indicated that, if she sits or uses her arms and hands for a long period of time, everything locks up on her.  Tr. 62, 64-65.  For example, she can sit for only about a half hour

---

[3] Jeffries testified that because of the discs protruding into her spine, she suffered permanent spinal cord damage.  Tr. 62.

3

before her joints and muscles become stiff. Tr. 64-65. She tries to take care of cleaning and cooking but it takes her a long time to complete those tasks. Tr. 63-64, 67-68. She cannot drive long distances but she does take her son to his activities and tries to attend his activities. Tr. 63. She undergoes physical therapy on a yearly basis to try to gain back her strength and balance. Tr. 64.

### 2. Vocational expert's testimony

Vocational Expert Wallace Stanfield ("VE") also testified at the hearing. Tr. 42, 46-48, 50-53, 65, 73-86. The VE provided testimony regarding the exertion and skill levels associated with Jeffries' past relevant work. Tr. 46-48. The VE indicated that Jeffries' computer programmer job was a sedentary, skilled position (Tr. 46-47); her job as a user support specialist was a sedentary, skilled position (Tr. 47-48); and her job as an IT instructor was a light, skilled position (Tr. 52-53). Following Jeffries' testimony that she cannot sit for longer than about a half hour the ALJ asked the VE whether the computer programmer job would allow for a sit/stand option. Tr. 64-65. The VE responded that there would be some mobility but computer programming work generally is done from a seated position. Tr. 65. The VE also stated that computer programming is a skilled occupation and therefore a high level of concentration, alertness, memory and overall mental capability is required. Tr. 84.

The ALJ asked the VE to assume that Jeffries has the ability to perform sedentary work, with no climbing of ladders, ropes, or scaffolds; only occasional climbing of stairs and ramps and all other posturals; only occasional overhead reaching bilaterally; frequent, not continuous, fingering and handling with the left hand; only occasional exposure to vibration; and only occasional exposure to hazards of any kind such as open water, open machinery and open flames; and only occasional exposure to extreme cold. Tr. 74. The VE indicated that Jeffries

would be able to perform her past sedentary positions.[4] Tr. 74-75. However, Jeffries would not be able to perform her past work as an IT instructor. Tr. 75.

The ALJ then asked whether Jeffries could perform either of her two past sedentary jobs if any of the sedentary requirements were eroded. Tr. 75. After a discussion between the ALJ and the VE regarding certain sedentary requirements,[5] the VE agreed that, based on the definition of sedentary work, if Jeffries was unable to sit at least six hours out of an eight-hour workday, she would be unable to perform a full range of sedentary work. Tr. 78-79.

### 3. ALJ's statements regarding determinative issue and need for a consultative examination

At the conclusion of the VE's testimony, the ALJ stated that the dividing line is:

> If Ms. Jeffries is at sedentary with the criteria that I laid out, she -- her capability -- I mean, if I -- if that's what I assess, and finally decide, she can do her past relevant work. If that is eroded significantly or in any other major way, she cannot. I mean, that's essentially what this case boils down to. So, the CE is critical --

Tr. 85.

The ALJ then reminded Jeffries that she was required to report for a consultative examination (CE) the following week. Tr. 86-87. He advised Jeffries' counsel that he would be provided an opportunity to respond once the consultative examining physician's report was proffered into evidence. Tr. 86. The ALJ closed the hearing but left the record open for completion of the consultative examination. Tr. 87.

---

[4] The VE later indicated that, if Jeffries were to miss three workdays each month, there would be no jobs available to her, including her past relevant work. Tr. 79. The VE also indicated that if an individual was off task between 10-15% of the time, it is unlikely that jobs would be available to such an individual. Tr. 82.

[5] The ALJ and VE appeared to disagree as to whether another requirement for sedentary work is the ability to stand or walk for two hours in an eight-hour day. Tr. 75-76, 76-79, 80-81, 83-84. This disagreement is not material to the issues herein.

## C. Post-hearing state agency consultative examination

As directed by the ALJ, following the administrative hearing, on September 14, 2010, Jeffries appeared for a consultative examination with Kimberly Togliatti-Trickett, M.D. Tr. 606-18. As part of the examination, Dr. Togliatti-Trickett conducted manual muscle testing. Tr. 606-09. She also completed a Mediation Source Statement setting forth her opinions as to Jeffries' ability to do work-related activities (Tr. 610-15) and she provided a narrative report containing her opinions regarding Jeffries' abilities (Tr. 616-18).

In her September 14, 2010, Medical Source Statement,[6] Dr. Togliatti-Trickett opined that Jeffries could: (1) lift up to 10 pounds continuously, 11-20 pounds occasionally, and 21-50 pounds never (Tr. 610); (2) carry up to 10 pounds continuously, 11-20 pounds occasionally, and 21-100 pounds never (Tr. 610); (3) sit for 1 hour without interruption, stand for 30 minutes without interruption, and walk for 30 minutes without interruption (Tr. 611); (4) sit for a total of 6 hours in an 8-hour workday, stand for a total of 1 hour in an 8-hour workday, and walk for a total of 1 hour in an 8-hour workday; (Tr. 611); (5) reach, handle, finger, feel, and push/pull frequently with both hands[7] (Tr. 612); (6) operate foot controls frequently with both feet[8] (Tr. 612); and (7) perform postural activities occasionally, including climbing stairs, ramps, ladders

---

[6] The Medical Source Statement contained the following definitions: "occasionally" means very little to one-third of the time; "frequently" means from one-third to two-thirds of the time; and "continuously" means more than two-thirds of the time. Tr. 610.

[7] Dr. Togliatti-Trickett noted that Jeffries' ability to balance would be limited if she was reaching while on her feet. Tr. 612.

[8] Dr. Togliatti-Trickett noted that Jeffries would experience fatigue with use of her lower extremities. Tr. 612.

6

and scaffolds, balancing, stooping, kneeling, crouching, and crawling[9] (Tr. 613); and (8) tolerate unprotected heights and moving mechanical parts occasionally[10] (Tr. 614).

In her September 15, 2010, narrative report, Dr. Togliatti-Trickett indicated that Jeffries reported being stiff all the time and having problems with balance. Tr. 616. Jeffries reported that her pain level was a seven out of ten; she felt better with medication and worse when sitting; and she could sit for 1 hour, stand for 15 minutes, walk for 15 minutes, and lift 10 pounds. Tr. 616. Dr. Togliatti-Trickett observed that Jeffries' gait showed a mild limp in her left lower extremity with a definitive gait on her left leg along with some underlying spasticity. Tr. 617. Jeffries had difficulty with tandem walking and had a cross-over gait. Tr. 617. Jeffries had good spinal alignment with mild tenderness with palpation over the cervical, thoracic, and lumbar spine. Tr. 617. Jeffries' motor strength was 5/5 in all four extremities and she had normal sensation with light touch and pin prick with the exception of hyperesthesia in the left upper extremity. Tr. 617. There was no evidence of muscle spasm or muscle atrophy present in any extremity. Tr. 617. Based on her examination of Jeffries, Dr. Togliatti-Trickett opined that Jeffries:

> [S]hould be able to stand and walk for at least 3-4 hours throughout the day. She has some difficulty with balance and ambulation long distances. There should be no problem with sitting. The patient should be able to lift and carry objects up to 10-15 pounds without difficulty. The patient has no problem hearing, seeing, speaking, traveling, or handling objects with the right upper extremity and mild difficulty with the left upper extremity with manipulation. If the patient returns back to gainful employment, a light or sedentary job would be recommended due to her underlying balance problems and spasticity of the lower extremities.

Tr. 618.

---

[9] Dr. Togliatti-Trickett noted that her opinion regarding Jeffries' ability to perform postural activities was based on Jeffries' balance being limited. Tr. 613.

[10] Dr. Togliatti-Trickett indicated that, other than limitations with respect to unprotected heights and moving mechanical parts, Jeffries had no other environmental limitations. Tr. 614. Also, Dr. Togliatti-Trickett's opinion with respect to unprotected heights and moving mechanical parts was based on Jeffries' limited balance when she is upright. Tr. 614.

**D.    Other medical opinions**

On November 12, 2008, W. Jerry McCloud, M.D., a state agency reviewing physician, completed a Physical RFC Assessment.  Tr. 417-24.  With respect to Jeffries ability to sit, Dr. McCloud opined that Jeffries could sit (with normal breaks) for a total of 6 hours in an 8-hour workday and could stand or walk for at least 2 hours in an 8-hour workday but was limited to standing 4 hours in an 8-hour day.  Tr. 418-19.  Dr. McCloud also noted that Jeffries had indicated that she cannot sit for too long because, if she does, her body locks up on her.  Tr. 422.  Dr. McCloud stated that the medical evidence of record showed that Jeffries had some limitations and experienced pain.  Tr. 422.  However, Dr. McCloud concluded that Jeffries' allegations were only partially credible.  Tr. 422.

On April 6, 2009, William Bolz, M.D., a state agency reviewing physician, also completed a Physical RFC Assessment.  Tr. 425-32.  Similar to Dr. McCloud, Dr. Bolz opined that Jeffries could sit (with normal breaks) for a total of 6 hours in an 8-hour workday and could stand or walk for at least 2 hours in an 8-hour workday but was limited to standing 4 hours in an 8-hour day.  Tr. 426-27.  Also, Dr. Bolz concluded that Jeffries' allegations regarding her functioning were only partially credible.  Tr. 430.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable

to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his January 11, 2011, decision, the ALJ made the following findings:

9

1. Jeffries meets the insured status requirements through December 31, 2013.  Tr. 19.

2. Jeffries has not engaged in substantial gainful activity since June 15, 2008, the amended onset date.  Tr. 19.

3. Jeffries has the following severe impairments: degenerative disc disease of the cervical spine with myelopathy, low back pain, and carpal tunnel syndrome.  Tr. 19.  Jeffries mood disorder, anxiety disorder and hypertension are non-severe impairments.  Tr. 19-21.  Jeffries' diagnosis of fibromyalgia is medically non-determinable.  Tr. 21.

4. Jeffries does not have an impairment or combination of impairments that meets or equals a Listing.[11]  Tr. 22.

5. Jeffries has the RFC to perform sedentary work with the following limitations: she can occasionally climb stairs and ramps but no ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she is limited to occasional overhead reaching bilaterally; frequent, but not continuous, fingering and handling with the left hand; occasional exposure to vibrations; occasional exposure to hazards; and occasional exposure to extreme cold.  Tr. 22-26.

6. Jeffries is capable of performing past relevant work as a computer programmer and user support specialist (sedentary and skilled).[12]  Tr. 26.

Based on the foregoing, the ALJ determined that Jeffries had not been under a disability from June 15, 2008, the amended alleged onset date, through the date of the decision.  Tr.  26.

### V. Parties' Arguments

**A. Plaintiff's Arguments**

Jeffries presents four arguments in support of her request for reversal and remand.  First, she argues that reversal and remand is warranted because the ALJ gave great weight to

---

[11] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[12] The ALJ indicated he had assessed Jeffries with a sedentary RFC with some non-exertional limitations and the computer programmer and user support specialist positions did not require performance of work-related activities precluded by Jeffries' RFC.  Tr. 26.

consultative physician Dr. Togliatti-Trickett's opinions, which included her opinion that Jeffries could sit for only one uninterrupted hour at a time, but the ALJ found that Jeffries had the RFC to perform sedentary work, which requires two hours of sitting at a time. Doc. 12, pp. 2-5; Doc. 17, pp. 1-2. Because the ALJ neither included Dr. Togliatti-Trickett's one hour sitting limitation in the RFC nor explained why that portion of Dr. Togliatti-Trickett's opinion was not adopted, Jeffries asserts that the ALJ erred. Doc. 12, pp. 2-5; Doc. 17, pp. 1-2.

Second, Jeffries argues that the ALJ committed multiple errors at Step Four,[13] including the ALJ's failure to determine the physical and mental demands of Jeffries' past relevant work; the ALJ's failure to perform a function-by-function comparison of the demands of Jeffries' past relevant work with her RFC; and the ALJ's reliance on VE testimony provided in response to an erroneous hypothetical question.[14] Doc. 12, pp. 5; Doc. 17, pp. 3-4.

Third, Jeffries argues that, because the ALJ's Step Four decision rested on his conclusion that she could perform past relevant work which was *skilled*, the ALJ erred by failing to account for her difficulties in concentration even though the ALJ concluded that she had mild difficulties in concentration, persistence, or pace. Doc. 12, pp. 6-7; Doc. 17, p. 4.

Fourth, Jeffries argues that the ALJ incorrectly concluded that Jeffries' activities constituted "strong" evidence of her ability to function to a greater degree than alleged. Doc. 12, p. 7; Doc. 17, p. 4.

**B.     Defendant's Arguments**

In response, the Commissioner states that the ALJ, not a physician, is responsible for assessing a claimant's RFC. Doc. 16, pp. 4-5. Thus, even though the ALJ afforded great weight

---

[13] The ALJ's decision is based on his Step Four conclusion that Jeffries can perform her past relevant work. Tr. 26-27.

[14] Jeffries asserts that the VE hypothetical was erroneous because it omitted the one hour sitting limitation as well as mild concentration limitations. Doc. 17, pp. 3-4.

11

to Dr. Togliatti-Trickett's opinion, the ALJ was not required to adopt her entire opinion.  Doc. 16, pp. 3-5.  Further, Defendant asserts that the ALJ's RFC determination concerning Jeffries' ability to sit for intervals of two, rather than one, hour is supported by substantial evidence, including the state agency reviewing physician opinions, which opined that Jeffries could sit for about six hours with no further sitting restrictions.  Doc. 16, p. 5.

The Commissioner also argues that the burden is on the claimant at Step Four and Jeffries failed to demonstrate that she is unable to perform her past relevant work.  Doc. 16, p. 7.  Defendant also asserts that the ALJ did not err in his Step Four analysis.  Doc. 16, p. 7.  Further, Defendant contends that the ALJ did consider and reasonably accounted for Jeffries' sitting and concentration limitations.  Doc. 16, p. 7.  The Commissioner also argues that the ALJ's VE hypothetical questions were proper and reflected all of the RFC limitations supported by the record.  Doc. 16, p. 7.

The Commissioner argues that the ALJ reasonably concluded that Jeffries had no more than mild limitations in maintaining concentration, persistence or pace and Jeffries has failed to demonstrate that limitations in concentration, persistence or pace warranted additional functional limitations or that the ALJ was required to incorporate mental limitations in the RFC to account for Jeffries' limitations in concentration, persistence, or pace.  Doc. 16, pp. 6-7.

Jeffries contends that the Commissioner did not respond to her fourth argument that the ALJ incorrectly concluded that her activities constituted "strong" evidence of her ability to function to a greater degree than she alleged.  Doc. 12, p. 7; Doc. 17, p. 4.  However, the Commissioner briefly addresses that argument; the Commissioner asserts that the ALJ reasonably concluded that Jeffries' statements concerning her daily activities undermined her allegations that she could not perform even a sedentary range of work.  Doc. 16, pp. 5-6.

**VI. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.   The ALJ did not sufficiently explain his treatment of the consultative examining physician's opinion**

Jeffries argues that reversal and remand is warranted because, while the ALJ gave great weight to consultative physician Dr. Togliatti-Trickett's opinion, he neither included the consultative examiner's one hour sitting limitation in the RFC nor did he explain why he did not adopt that portion of Dr. Togliatti-Trickett's opinion. Doc. 12, pp. 2-5; Doc. 17, pp. 1-2. Defendant argues that determination of Jeffries' RFC rested with the ALJ and the record evidence as a whole is not inconsistent with the ALJ's determination that Jeffries could perform the exertional requirements for sedentary work. Doc. 16, p. 6.

The Commissioner correctly asserts that the responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability." SSR No. 96-5p, 1996 SSR LEXIS 2, *14 (July 2, 1996). An RFC assessment is "based on consideration of all relevant evidence in the case

13

record." *Id.* at * 12.  Social security rulings further provide that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR No. 96-8p, 1996 SSR LEXIS 5, * 20 (July 2, 1996).  Additionally, while an ALJ is not required to incorporate all evidence into the RFC, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR No. 96-8p, 1996 SSR LEXIS 5, * 19.

The ALJ sent Jeffries to a post-hearing consultative examination.  Tr. 86.  During the administrative hearing, the ALJ stated that the consultative examination was "critical" and indicated that he was "very interested" in hearing the results of the consultative examination.  Tr. 85.  The ALJ stated that:

> If Ms. Jeffries is at sedentary with the criteria that I laid out, she -- her capability -- I mean, if I -- if that's what I assess, and finally decide, she can do her past relevant work.  If that is eroded significantly or in any other major way, she cannot.  I mean, that's essentially what this case boils down to.  So, *the CE is critical* --

Tr. 85 (emphasis supplied).

On September 14, 2010, Dr. Togliatti-Trickett conducted the post-hearing consultative examination.[15]  Tr. 606-19.  In her Medical Source Statement, Dr. Togliatti-Trickett opined that Jeffries can sit for only one uninterrupted hour at a time.[16]  Tr. 611.  In her narrative report, Dr. Togliatti-Trickett opined that Jeffries should have no problems with sitting and, if Jeffries returned to work, light or sedentary work would be recommended.  Tr. 18.  After discussing Dr.

---

[15] Dr. Togliatti-Trickett completed a Medical Source Statement and also prepared a narrative report.  Tr. 610-18.

[16] In the Medical Source Statement, Dr. Togliatti-Trickett also opined that Jeffries could sit for a total of 6 hours in an 8-hour workday.  Tr. 611.

14

Togliatti-Trickett's opinion, including the above findings, the ALJ gave great weight to Dr. Togliatti-Trickett's opinion.[17] Tr. 24-25.

The ALJ ultimately concluded that Jeffries had a sedentary RFC with some non-exertional limitations. Tr. 22.[18] Defendant acknowledges that, under Social Security Ruling 96-9p, the ALJ's RFC sedentary determination allowed Jeffries to sit for two hours at a time rather than limiting her to sitting for only one uninterrupted hour. Doc. 16, p. 4; *see* Social Security Ruling 96-9p, 1996 SSR LEXIS 6, * 17 (July 2, 1996) (providing that, "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break <u>at approximately 2-hour intervals</u>.") (Emphasis supplied.) Thus, the ALJ's RFC allows Jeffries to sit for "2-hour intervals," which is inconsistent with Dr. Togliatti-Trickett's opinion.[19] In light of the ALJ's statements that Jeffries would not be able to perform her past relevant work if the sedentary criteria were eroded significantly or in any other major way (Tr. 85), that he gave great weight to the CE's opinion (Tr. 25), and that the CE examination was "critical" (Tr. 85), the ALJ should have explained why he chose not to incorporate the CE's one hour sitting limitation in the RFC. *See* SSR No. 96-8p, 1996 SSR LEXIS 5, * 20 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")

---

[17] The ALJ also gave some weight to the opinions of state agency reviewing physicians Dr. McCloud and Dr. Bolz who each opined that Jeffries could sit for about 6 hours in an 8-hour workday. Tr. 25.

[18] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR 404.1567(a).

[19] Defendant does not argue that the RFC is consistent with Dr. Togliatti-Trickett's one-hour sitting limitation. Rather, Defendant argues that the record evidence as a whole is not inconsistent with the ALJ's determination that Jeffries could perform the exertional requirements for sedentary work. Doc. 16, p. 6.

Moreover, Dr. Togliatti-Trickett's opinion itself contains inconsistencies.  For example, as indicated in her Medical Source Statement, Dr. Togliatti-Trickett opined that Jeffries could sit uninterrupted for only one hour at a time.[20]  Tr. 611.  In contrast, in her narrative report, Dr. Togliatti-Trickett's opinion included no restrictions as to the number of hours Jeffries could sit for and she opined that Jeffries should have no problems with sitting.  Tr. 618.  Also, in her narrative report, she opined that, if Jeffries returned to work, light or sedentary work would be recommended.  Tr. 618.  In view of these inconsistencies and because the ALJ gave great weight to Dr. Togliatti-Trickett's opinion, even if the ALJ was not required to adopt Dr. Togliatti-Trickett's one hour sitting limitation, the ALJ should have explained how he considered and resolved the inconsistencies.  *See* SSR No. 96-8p, 1996 SSR LEXIS 5, * 19 (an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.")

Based on the foregoing, while assessment of Jeffries' RFC was reserved to the ALJ and the ALJ may not have been required to adopt every limitation contained in Dr. Togliatti-Trickett's opinion, the ALJ's failure, at a minimum, to explain his reasons for not adopting Dr. Togliatti-Trickett's one hour sitting limitation and/or how he accounted for the apparent inconsistencies within the CE's opinion[21] is not harmless error and leaves this Court to speculate as to the ALJ's reasoning. Further, since the consultative examination was conducted post-hearing, the ALJ did not have the ability to ask hypothetical questions to the VE based on Dr.

---

[20] Additionally, there appear to be conflicting opinions with respect to Jeffries' ability to stand and walk.  Tr. 611, 618.  For example, in the Medical Source Statement, Dr. Togliatti-Trickett opined that Jeffries could stand for a total of one hour in an 8-hour workday and could walk for a total of one-hour in an 8-hour workday.  Tr. 611.  However, in her narrative report, Dr.Togliatti-Trickett opined that Jeffries should be able to stand and walk for at least 3-4 hours throughout the day.  Tr. 618.

[21] For example, the ALJ does not explain the inconsistency between Dr. Togliatti-Trickett's opinion that Jeffries could sit for only one uninterrupted hour at a time and her opinion that sitting should not be a problem for Jeffries. Tr. 611, 618.

16

Togliatti-Trickett's opinion. Without sufficient analysis by the ALJ regarding Dr. Togliatti-Trickett's opinion or VE testimony with respect to whether a one hour sitting limitation would impact Jeffries's ability to perform her past sedentary jobs, the Court cannot determine whether the Commissioner's decision is supported by substantial evidence. Accordingly, reversal and remand is warranted for further consideration and/or analysis in accordance with the applicable social security regulations and rulings, including SSR No. 96-8p.

**B.     Other issues raised**

Since further consideration and/or analysis of Dr. Togliatti-Trickett's opinion on remand may impact the ALJ's findings with respect to Jeffries' RFC, as well as his findings under the remaining steps of the sequential analysis, the Court declines to address Plaintiff's other arguments. *See Trent v. Astrue*, 2011 WL 841538, * 7 (N.D. Ohio Mar. 8, 2011) (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, subsequent steps in the sequential evaluation process might be impacted).

## VII. Conclusion

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

Dated: August 21, 2013

Kathleen B. Burke
United States Magistrate Judge

17